The Honorable Louis M. McJunkin State Representative P.O. Box 223 Springdale, Arkansas 72765-0223
Dear Representative McJunkin:
This is in response to your request for an opinion on three questions arising in a hypothetical situation where the State of Arkansas reduces the local share of financial support for public education and increases the state share by creating a money pool dedicated to funding public education and reducing property tax millages across the state. Your three questions with regard to this hypothetical situation are as follows:
 1. Does the Legislature have authority to mandate a rollback of millage rates by the taxing units, or would a rollback require an amendment to the Arkansas Constitution?
 2. What could be done to protect bondholders whose investment might be put at risk by such a rollback?
 3. Since property taxes collected per pupil vary by school district according to local capacity and effort, while total financial support for education is distributed on a per pupil basis, are there any constitutional problems if the state share replaces the local share and distribution is less equal per pupil?
In response to your first question, I must initially note the difficulty in analyzing hypothetical legislation. A definite response to your questions would require reference to a specific rollback proposal by the legislature. I can point out generally, however, at least two constitutional provisions which might stand as a barrier to the legislature implementing a "rollback" of school district millage rates. The first is Arkansas Constitution art. 14, 3, which authorizes school districts to levy an annual tax for the maintenance of schools. This provision requires the board of directors of each school district to annually prepare a proposed budget along with a proposed rate of tax to support it. The tax is presented to the voters for their approval or disapproval at the annual school election. Article 14, 3 provides that:
 If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election.
As can be seen from the language above, the voters of each individual school district are invested by the Constitution with the right to set local millage rates in their district. A rollback of such rates by the legislature, without voter approval, or other constitutional sanction, might be challenged on this basis.[1]
The other constitutional provision which would be implicated by any legislative "rollback" of school district millage rates is Amendment 59. This constitutional provision currently requires a rollback of certain personal property levies, and of course, any legislative attempt to rollback school district millage rates could not constitutionally conflict with Amendment 59. While I cannot analyze the consistency of a hypothetical piece of legislation with Amendment 59, its provisions would have to be taken into account in drafting any such "rollback" legislation.
In response to your second question, which inquires as to how bondholders' interests could be protected in light of such a rollback, I must note that any protection granted such investments would presumably be accomplished through the provisions of the hypothetical legislation which would effect the rollback, which provisions might include an exemption for bond millages. I cannot, in an official opinions context, however, suggest or draft legislative proposals.
In response to your third question, it is difficult to conceive how the supplanting of widely varying local school funding (which is subject to application of the state school funding formula) with a solely state per pupil distribution, would result in a distribution which is less equal per pupil. Assuming, however, that for some reason this is the result, constitutional problems are a distinct possibility. The Arkansas Supreme Court in Dupree v. Alma School District No. 30, 279 Ark. 340, 651 S.W.2d 90 (1983), held that the provisions of Arkansas Constitution, art. 14, 1 and the equal protection provisions of the Arkansas Constitution require the state to provide an "equal educational opportunity" to the state's school children. It found wide disparity in the levels of school funding across the state and therefore struck down the system of school funding existing at that time. To the extent any similar disparity occurs by virtue of the hypothetical rollback, the system could again be vulnerable to a constitutional attack.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
Enclosure
[1] This office recently issued Op. Att'y Gen. 94-042 (copy enclosed) which concluded that the procedure for reducing a school district millage is through the election requirement set out in art. 14, 3.